1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO ALONSO,<br><br>Plaintiff,<br><br>v.<br><br>BLACKSTONE FINANCIAL GROUP.<br>LLC, et al.,<br><br>Defendants. | Case No.  1:11-cv-01693-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ELSEN'S MOTION TO DISMISS  (ECF Nos. 42, 49, 60)<br><br>ORDER DENYING DEFENDANTS BLACKSTONE AND ELSEN'S MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 43, 44, 51, 52, 54, 55, 56, 57, 58, 59, 61, 65, 66) |

### I.

### INTRODUCTION

Plaintiff Rosario Alonso filed this action on October 10, 2011.  (ECF No. 1.)  The action is currently proceeding on the first amended complaint, filed February 26, 2013, against Defendants Blackstone Financial Group, LLC ("Blackstone") and Jason Elsen alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Rosenthal Fair Debt Collection Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.32.  (ECF No. 31.)

On May 13, 2013, Defendant Elsen filed a motion to dismiss.  (ECF No. 42.)  Defendants Blackstone and Elsen filed separate motions for summary judgment on May 20, 2013.  (ECF Nos. 43, 44.)  Plaintiff filed oppositions to the motions on July 10, 2013.  (ECF Nos. 49, 51, 52.)  On July 18, 2013, Defendants Blackstone and Elsen filed objections and replies to Plaintiff's

1

oppositions to their separate motions for summary judgment.[1]  (ECF Nos. 54-59.)  On July 19, 2013, the parties filed joint statements of undisputed facts.  (ECF Nos. 60, 61.)  A hearing on Defendants' motions was held on July 24, 2013.  Counsel William Krieg and John Gist appeared for Plaintiff and counsel Michael Goode appeared telephonically for Defendants Blackstone and Elsen.  Following the hearing, the parties submitted supplemental briefing on July 25, 2013.  (ECF No. 65, 66.)  Having considered the moving papers, opposition and reply papers, supplemental briefing, and the argument during the July 24, 2013 hearing, the Court issues the following order.

## II.

### ALLEGATIONS IN FIRST AMENDED COMPLAINT

Prior to October 11, 2010, Plaintiff incurred a financial obligation to J.P Morgan Chase Bank and fell behind in payments.  (First Am. Compl. ¶¶ 19, 21, ECF No. 31.)  The debt was assigned to Defendant Blackstone for collection.  (Id. at ¶ 22.)  Plaintiff alleges that on October 11, 2010, an agent of Defendant Blackstone contacted Plaintiff's former husband, Michael Alonso, at work and identified himself as a law enforcement officer, "Officer Carmichael".  (Id. at ¶¶ 23, 28.)  During the conversation, Officer Carmichael informed Mr. Alonso that a legal case was pending against Plaintiff, that he was liable for the debt, and his wages could be garnished. The caller left a phone number and case number and told Mr. Alonso to have Plaintiff call that day to speak with him.  (Id. at ¶ 25.)

Shortly after receiving the call, Mr. Alonso spoke with Plaintiff and conveyed the information he received from Officer Carmichael.  (Id. at 34.)  Later that same day, Plaintiff called the phone number left with Mr. Alonso.  The phone was answered by a woman who said, "Blackstone Financial Group," and when Plaintiff asked for Officer Carmichael, she was connected with Steven Darwin who stated he was taking Officer Carmichael's calls and repeated

---

[1] The parties object to each other's statement of undisputed facts.  However, the Court will not consider the separate statements of undisputed facts filed by the parties as the parties were ordered to file a joint statement of undisputed facts.  Further, Defendant Blackstone objects to Plaintiff's statements regarding her medical condition based lack of foundation.  Evidence to prove personal knowledge may consist of the witness's own testimony.  Fed. R. Evid. 602. In this instance, Plaintiff's statements regarding her medical condition and symptoms would be based upon her personal knowledge and Defendant's objections are overruled.

1   the misrepresentations told to Mr. Alonso.  (Id. at ¶ 35.)  Mr. Darwin told Plaintiff that he was

2   contacting her on behalf of Chase regarding her credit card.  (Id. at ¶ 38.)  When Plaintiff

3   informed Mr. Darwin that she was unable to talk because she was driving, he told her that she had

4   to make a payment that day or an officer would come to her work the following day to escort her

5   from work.  (Id. at ¶¶ 41-42.)  On the same day, Plaintiff borrowed money from a family member

6   and made a $100 payment on the account.  (Id. at ¶ 42.)

7       Plaintiff alleges that Defendant Elsen was an officer, director, managing member,

8   principal shareholder, and person in control of Defendant Blackstone.  Defendant Elsen regularly

9   engaged, directly and indirectly, in the collection of debts.  Defendant Elsen personally

10  participated in, had personal knowledge of, authorized and ratified each of the acts alleged as an

11  officer, director and managing director of Defendant Blackstone.  (Id. at ¶ 12.)

12                                         **III.**

13                               **MOTION TO DISMISS**

14      **A.      LEGAL STANDARD**

15      In considering a motion to dismiss for failure to state a claim, the court generally

16  considers only the pleadings and must accept as true the allegations in the complaint.  Marder v.

17  Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension

18  Trust Fund, 332 F.3d 1198, 1201, 1203 (9th Cir. 2002).  The court is to "construe the pleading in

19  the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's

20  favor.  Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).

21      A motion to dismiss for failure to state a claim is properly granted where the complaint

22  lacks "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory."

23  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting Balistreri v.

24  Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)).  There are two requirements to survive

25  a motion to dismiss for failure to state a claim under Rule 12(b) (6).  While accepting factual

26  allegations in the complaint as true, the court is not required to accept legal conclusions as true,

27  and the factual allegations must state a plausible claim for relief.  Maya v. Centex Corp., 658 F.3d

28  1060, 1067 (9th Cir. 2011).

3

1

### B.   DISCUSSION

Plaintiff alleges that the actions described in the complaint violate various provisions of 15 U.S.C. §§ 1692 et seq. and California Civil Code § 1788.17.  Defendant Elsen contends that Plaintiff has named him in this action under two legal theories, that he violated the FDCPA and that he was an alter ego of Defendant Blackstone, and each of these claims must be dismissed. (Def. Jason Elsen's Mem. of P. & A. in Supp. of Mot. to Dismiss First Am. Compl. 6, ECF No. 42-1.[2])  Plaintiff replies that she has alleged Defendant Elsen is liable under three different theories: FDCPA and RFDCPA, alter ego, and successor in interest.  Plaintiff argues that Defendant's motion to dismiss should be denied on the grounds that he has not carried his burden to show that the complaint fails to state a claim, or challenged her allegation of successor in interest liability.[3]  (Pl.'s Opp. to Def. Jason Elsen's Mot. to Dismiss First Am. Compl. 7, ECF No. 49.)  The Court will address the two bases raised in Defendant Elsen's motion to dismiss: 1) whether Plaintiff has sufficiently alleged a claim under section 1692 et seq. against Defendant Elsen for his participation in the debt collection business; and 2) whether Plaintiff has sufficiently alleged alter ego liability in the first amended complaint.

### 1.   Plaintiff's Amended Complaint States a Claim Against Defendant Elsen Under 15 U.S.C. § 1692 et seq.

Defendant Elsen argues there are no allegations that he directly participated in the

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3] Plaintiff argues that Defendant Elsen has not met his burden of showing that the facts alleged in the complaint fail to state a claim. (Pl.'s Opp. to Def.'s Mot. to Dismiss First Am. Compl. 11, ECF No. 49.)  In the motion to dismiss, Defendant Elsen contends that Plaintiff has not alleged any facts that he is directly or indirectly involved in the debt collection process or liable as an alter ego.  This is sufficient to meet Defendants' burden in this instance.

Additionally, Plaintiff argues that since Defendant Elsen did not challenge her successor-in-interest allegations he does not dispose of all theories and the motion must be denied on that basis alone.  (Id. at 9.)  However, the failure to challenge the single claim would only result in that claim surviving should the motion to dismiss the claims brought here be granted.

In his supplemental points and authorities, Defendant Elsen states that his statement of undisputed facts included a statement that he was not a successor in interest to Defendant Blackstone.  (ECF No. 65 at 3:20-23.)  However, merely placing a statement in a declaration or a statement of undisputed facts does not raise the issue.  Defendant's motion clearly raised the issues that the complaint failed to state a claim against Defendant Elsen based on two theories, whether he was liable as a debt collector under the FDCPA and whether he was an alter ego of Defendant Blackstone.  (ECF No. 42-1 at 6-11.)  Additionally, Defendant's statement of undisputed facts has not been considered by the Court as the parties were ordered to file a joint statement of undisputed facts.

1  incidents alleged in the complaint.  Defendant Elsen contends that he was deposed for over six

2  hours on November 5, 2012, and it is clear that Plaintiff knows that he did not engage directly or

3  indirectly in the alleged wrongful conduct and the allegations made on information and belief are

4  not adequate to state a claim.  (ECF No. 42-1 at 9.)  Plaintiff responds that pleading on

5  information and belief is expressly allowed under Federal Rule of Civil Procedure 11.  (ECF No.

6  49 at 7.)

7       Under the Federal Rules of Civil Procedure, a complaint needs only to allege facts with

8  sufficient specificity to notify the defendant of the plaintiff's claims.  Fed. R. Civ. P. 8(a);

9  Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 790 (9th Cir. 2011).  To survive a Rule 12(b)

10  (6) motion to dismiss, the complaint does not need to include detailed factual allegations, but

11  must contain "enough facts to state a claim to relief that is plausible on its face."  Weber v. Dep't

12  Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly,

13  127 S.Ct. 1955, 1974 (2007)).  "So long as the plaintiff alleges facts to support a theory that is not

14  facially implausible, the court's skepticism is best reserved for later stages of the proceedings

15  when the plaintiff's case can be rejected on evidentiary grounds."  In re Gilead Sciences Securities

16  Litigation, 536 F.3d 1049, 1057 (9th Cir. 2008).

17       Finally, Federal Rule of Civil Procedure 11(b) allows information based on personal

18  knowledge or on information and belief as long as there is a good faith basis for doing so based

19  on reasonable inquiry.  Langadinos v. American Airlines, Inc., 199 F.3d 68, 73 (1st Cir. 2000).

20  While the allegations in the complaint are made on "information and belief", at the pleading

21  stage, the Court accepts the allegations in determining the sufficiency of the pleadings.[4]

22       "To establish a claim under the FDCPA, a plaintiff must show: (1) she is a consumer

23  within the meaning of 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into

24  for personal purposes; (3) the defendant is a debt collector within the meaning of 15 U.S.C. §

25  1692a(6); and (4) the defendant violated one of the provisions of the FDCPA, 15 U.S.C. §§

26  1692a–1692o."  Laugenour v. Northland Group Inc., No. 2:12-cv-02995 GEB DAD PS, 2013 WL

27

28
_____
[4] In deciding a motion to dismiss for failure to state a claim, whether the evidence will ultimately support the
allegations is not for the Court to determine, but rather the Court merely weighs the adequacy of the pleadings.

3745727, at *2 (E.D. Cal. July 15, 2013) (citing <u>Moriarity v. Nationstar Mortg., LLC</u>, No. 1:13–cv–0855 AWI SMS, 2013 WL 3354448, at *4 (E.D. Cal. July 3, 2013)).  Plaintiff has specifically alleged the first two elements of an FDCPA claim.

As discussed below, a debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly <u>or indirectly</u>, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (emphasis added).  Given the additional factual allegations regarding the incidents alleged, Plaintiff's allegation that Defendant Elsen regularly engaged in the collection of debts at Defendant Blackstone and directly <u>and indirectly participated</u> in the conduct alleged in the complaint are sufficient to state claim against Defendant Elsen for violation of the FDCPA and RFDCPA.  (First Am. Compl. ¶ 12, ECF No. 31.)  For purposes of the motion to dismiss, Plaintiff has set forth sufficient facts to allege violations of the FDCPA.  Defendant Elsen's motion to dismiss for failure to state a claim under 15 U.S.C. § 1692 et. seq. is denied.

> **2.      The Complaint Does Not Contain Facts to Allege that Defendant Elsen is An Alter Ego of Defendant Blackstone**

Defendant Elsen next argues that the amended complaint does not allege facts to show he is liable as an alter ego of Defendant Blackstone.  In his motion, Defendant Elsen sets forth the legal standards that apply to Limited Liability Companies and the imposition of alter ego liability.  (ECF No. 42-1 at 9-10.)  Plaintiff responds that Defendant Elsen has failed to do more than offer general statements and hornbook law on the purpose of corporate form and liability and such is not sufficient to meet its burden to show that the complaint fails to state a claim.  (ECF No. 49 at 11.)

In the first amended complaint, Plaintiff states that Defendant Elsen is liable for the conduct alleged as an alter ego of Defendant Blackstone.  (ECF No. 31 at § 12.)  In determining whether alter ego liability applies, the federal court looks to the law of the forum state.  <u>In re Schwarzkopf</u>, 626 F.3d 1032, 1037 (9th Cir. 2010).  When a court disregards a corporate entity, it will pierce the corporate veil.  <u>Greenspan v. LADT, LLC</u>, 191 Cal.App.4th 486, 511 (2010).  "A

1   request to pierce the corporate veil is only a means of imposing liability for an underlying cause

2   of action and is not a cause of action in and of itself." Local 159, 342, 343 &444 v. Nor-Cal

3   Plumbing, Inc., 185 F.3d 978, 984 (9th Cir. 1999).

4       Under California law, whether the corporate veil will be pierced is dependent on the

5   circumstances of each case, but there are two general requirements: "(1) that there be such unity

6   of interest and ownership that the separate personalities of the corporation and the individual no

7   longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable

8   result will follow." Greenspan, 191 Cal.App.4th at 511; In re Schwarzkopf, 626 F.3d at 1038.

9       At the July 24, 2013 hearing on these motions, Plaintiff argued that the allegations in the

10  first amended compliant are sufficient to put Defendants on notice.   However conclusory

11  allegations of alter ego status are not sufficient to survive a motion to dismiss.   Smith v.

12  Simmons, No. 1:05-cv-01187, 2008 WL 744709, at *11 (E.D. Cal. Mar. 18, 2008).   In this

13  instance, Plaintiff has alleged no facts to describe how Defendant Elsen failed to treat Blackstone

14  as a separate entity or what inequity would result under the circumstances presented here.

15  Plaintiff has failed to state a claim that Defendant Elsen is liable on an alter ego theory of

16  liability.  Therefore, Defendant's motion to dismiss Plaintiff's claim based upon alter ego liability

17  is granted.

18      In dismissing the alter ego claim, the Court would generally consider whether to grant

19  Plaintiff an opportunity to amend the complaint.    In this case, Plaintiff was previously granted

20  leave to amend for the express purpose of stating a claim against Defendant Elsen, including  alter

21  ego.  (See ECF No. 29.)  At the hearing, Plaintiff did not identify any additional facts that could

22  be alleged in an amended complaint which would cure the deficiencies in her alter ego claim.

23  Plaintiff merely contends that Defendant Elsen had substantial involvement in the day-to-day

24  operations at Blackstone, which is insufficient to establish alter ego liability.  These facts do not

25  equate to alter ego; otherwise, a person who exercises appropriate business standards could

26  "pierce the veil" simply because of an appropriate business approach to managing one's business.

27  This is not the state of the law.  Much more must be alleged.  Notably, at the time Plaintiff filed

28  her First Amended Complaint to assert the alter ego claim, she had the benefit of over ten months

1  of discovery to investigate whether there was any basis for alter ego liability.  The Court finds

2  that further leave to amend would be futile.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (leave to

3  amend may be denied if amendment would be futile).  Defendant Elsen's motion to dismiss on

4  this ground shall be granted, without leave to amend.

5  **IV.**

6  **MOTION FOR SUMMARY JUDGMENT**

7      **A.**    **Legal Standard**

8       Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

9  it is demonstrated that there exists no genuine issue as to any material fact, and that the moving

10  party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after

11  adequate time for discovery and upon motion, against a party who fails to make a showing

12  sufficient to establish the existence of an element essential to that party's case, and on which that

13  party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

14  The "party seeking summary judgment bears the initial responsibility of informing the district

15  court of the basis for its motion, and identifying those portions of the 'pleadings, depositions,

16  answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

17  believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex</u>, 477 U.S. at 323

18  (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

19       If the moving party meets its initial responsibility, the burden then shifts to the opposing

20  party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec.</u>

21  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  A fact is material if it will affect the

22  outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In attempting

23  to establish the existence of this factual dispute, the opposing party may not rely upon the denials

24  of its pleadings, but is required to tender evidence of specific facts in the form of affidavits,

25  and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R.

26  Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.

27       The parties bear the burden of supporting their motions and oppositions with the papers

28  they wish the Court to consider and/or by specifically referencing any other portions of the record

for consideration.  <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B.      Defendant Blackstone's Motion for Summary Judgment

Defendant Blackstone contends that summary judgment should be granted on the issue of damages because Plaintiff has not shown any evidence of actual damages.[5]  (Def. Blackstone's Mot. for Summary Adjudication of Issues as to Pl.'s First Am. Compl. 6, ECF No. 43.)  Plaintiff responds by stating that the actual damages she intends to prove at trial include a) the $100 she paid to Defendant Blackstone as a direct result of the conduct that violated the FDCPA and RFDCPA, and b) emotional distress.[6]  (Pl.'s Memo. of P. & A. in Opp. to Def. Blackstone's Mot. for Summary Adjudication of First Am. Compl. 5-6, ECF No. 51-1.)

### 1.      Undisputed Facts

After speaking with Michael Alonso, Plaintiff immediately called Defendant Blackstone at the telephone number she was given and asked for Officer Carmichael. (UF 1.)  Plaintiff spoke with a Defendant Blackstone representative that introduced himself as "Steve Darwin" and informed her that he was taking Officer Carmichael's calls and that he could handle Officer Carmichael's cases.  (UF 2.)  During the first telephone conversation with Defendant Blackstone, Darwin asked Plaintiff for the case number, and informed her that she owed over $13,000 for a Chase credit card debt.  (UF 3.)  This first telephone call with Darwin only increased Plaintiff's level of fear and anxiety.  (UF 4.)

Plaintiff called Defendant Blackstone a second time and spoke with Darwin, who once again threatened that she had to make a payment that day in order to stop a law enforcement officer from visiting her at work.  (UF 5.)  During this second phone call to Defendant

---

[5]  Defendant seems to suggest that there is no evidence of damages because there is no causal link between Blackstone's alleged actions and Plaintiff's alleged injuries.  The complaint and disputed/undisputed facts suggest otherwise because 1) Officer Carmichael's conversation with Plaintiff's ex-husband would be actionable as a prohibited communication with a third party in an attempt to collect Plaintiff's debt, 15 U.S.C. § 1692c(b), and 2) "Darwin's" conversation with Plaintiff could have caused Plaintiff's injuries.

[6]  Plaintiff objects to Defendant's evidence on the ground that the motion relies solely on Plaintiff's deposition testimony and Defendant failed to make the transcript part of the official record.  However, a copy of Plaintiff's deposition transcript was provided to the court and the deposition testimony shall be considered in determining the merits of Defendants' motions for summary judgment.

1    Blackstone, Darwin demanded that Plaintiff make another payment later in the week, and
2    threatened that if she did not commit to the payment arrangement, a law enforcement officer
3    would visit her work and escort her out.  (UF 6.)  At the time of the conduct alleged, Plaintiff was
4    regularly taking prescribed medication to help control the added pain, nausea, and other
5    symptoms she experienced when flare-ups of her medical condition occurred.  (UF 7.)

6              2.    Actual Damages

7              Under the FDCPA and RFDCPA, in addition to statutory damages, a plaintiff may recover
8    actual damages sustained as a result of conduct in violation of the statutes. 15 U.S.C. §
9    1692k(a)(1); Cal. Civ. Code § 1788.17.  The statute does not define "actual damages."  As noted
10   above, plaintiff is requesting actual damages in two areas: 1) the $100 paid by Plaintiff to
11   Defendants as a result of their conduct and b) emotional distress.  Defendant Blackstone contends
12   in the motion for summary judgment that, as a matter of fact, Plaintiff cannot prove any actual
13   damages.  The Court will address each subset of actual damages separately.

14        **a.      $100 Paid to Defendants**

15             Plaintiff contends that her actual damages include the $100 she paid to Defendants after
16   they violated the statute.

17             Following the July 24, 2013 hearing, the parties were granted leave to file supplemental
18   briefing regarding whether the $100 paid on the debt would be actual damages.  Defendants
19   respond that after an extensive search, they are unable to find any case addressing the issue and
20   ask the Court to find that the payment is not actual damages based on California Civil Code
21   Section 1606 which states that an existing obligation is good consideration for a promise.  (Supp.
22   P. & A. Filed Post Hearing 1-2, ECF No. 65.)  Plaintiff filed supplemental briefing identifying
23   three "out of circuit" cases, Hamid v. Stock & Grimes, LLP, 876 F.Supp.2d 500 (E.D. Pa. 2012);
24   Abby v. Page, No. 1:10-cv-23589, 2013 WL 141145 (S.D. Fla. Jan. 11, 2013); and Gervais v.
25   O'Connell, Harris & Associates, Inc., 297 F.Supp.2d 435, 439 (D. Conn. 2003), that have found
26   that payments made due to violative debt collection practices are damages under the FDCPA. [7]

27
28   _____
     [7] The third case Plaintiff cites, Gervais, 297 F.Supp.2d 435 (D. Conn. 2003), merely awards the prior payment to
     settle the debt as damages without discussion.  See also Spicer v. Lenehan, No. 3:03-cv-01810(RNC), 2004 WL

1   (Supp. Brief in Opp. 2, ECF No. 66.)

2          In <u>Hamid</u>, the court considered whether a debtor could recover money that had been paid

3   to settle the underlying state court action filed by the debt collector in a subsequent FDCPA

4   action.  876 F.Supp.at 503.  The court stated that "[i]f her payment was not a proper element of

5   actual damages under the FDCPA, a debt collector could harass a debtor in violation of the

6   FDCPA, as a result of that harassment collect the debt, and thereafter retain what it collected.  We

7   do not believe that Congress intended this result."  <u>Id.</u> at 503.

8          The defendant in <u>Abby</u>, argued that under state law the amount paid to settle a disputed

9   debt was not actual damages under the FDCPA.  2013 WL 141145, at *9.  The court had

10  previously held that state law defenses were not relevant to the federal law claim, and stated

11  "because the FDCPA permits a plaintiff to recover for violations of the law even when he

12  defaulted on a debt, it follows that debtors may recover the amount paid to settle a debt if the debt

13  collector violated the FDCPA in connection with collecting that debt."  <u>Id.</u> (internal punctuation

14  and citation omitted).

15         In addition to these cases, the Court found an additional case "in circuit" which addressed

16  actual damages, but in the context of a state law claim, not a claim under the FDCPA, <u>Moritz v.</u>

17  <u>Daniel N. Gordon, P.C.</u>, 895 F.Supp.2d 1097 (W.D. Wash. 2012).  In <u>Mortiz</u>, the court held that

18  payments that were less than the amount that the debtor owed are not actual damages.  Relying on

19  several state cases, the court in <u>Moritz</u> distinguished its case from <u>Hamid</u> by noting that in <u>Hamid</u>

20  the statute of limitations barred the action in state court.  895 F.Supp.2d at 1117-18.  However,

21  <u>Hamid</u>'s holding was not based on the statute of limitations issue.  In <u>Hamid</u>, the court stated:

22         It is clear from its underlying purpose that debtors may recover for violations of
           the FDCPA even if they have defaulted on a debt. It follows that debtors may
23         recover the amount paid to settle a debt, if the debt collector violated the FDCPA
           in making the collection, as occurred here. Hamid paid some or all of the money
24         she owed to Discover Bank only as a result of the untimely lawsuit filed by S & G
           on behalf of the Bank. If her payment was not a proper element of actual damages
25         under the FDCPA, a debt collector could harass a debtor in violation of the
           FDCPA, as a result of that harassment collect the debt, and thereafter retain what
26         it collected. We do not believe that Congress intended this result.

27

28  3112554, at *2 (D. Conn. Sept. 14, 2004) (awarding same based on <u>Gervais</u>);

876 F.Supp.2d at 503.  Since the <u>Moritz</u> court did not consider the intent of the FDCPA in deciding whether a payment made due to a violation of the statute was actual damages, the court does not consider it persuasive authority in this instance.

Overall, the Court agrees with the reasoning of <u>Hamid</u>, that allowing a debt collector to keep the amount received by violating the FDCPA is not consistent with the stated purpose of the FDCPA which is "to eliminate abuse debt collection practices by debt collectors. . . ."  15 U.S.C. § 1692(e).  Allowing debt collectors to retain money that was collected by violating the FDCPA would encourage misconduct, especially in cases where large amounts of debt are owed.  Because the language seems to make this a strict liability statute, it should be interpreted liberally.  <u>Clark v. Capital Credit & Collection Servs., Inc.</u>, 460 F.3d 1162, 1175–76 (9th Cir. 2006).

In this case, Defendant Blackstone purchased Plaintiff's debt and received an assignment of the debt from the original creditor.  Accordingly, Blackstone would be unjustly enriched if it were allowed to retain the payments on the debt that it received as a result of its violation of the FDCPA.[8]  Accordingly, the Court finds that, consistent with the stated purpose of the FDCPA, the $100 which Plaintiff paid due to the alleged violations of the FDCPA can be considered as actual damages with the meaning of the FDCPA.  Therefore, as a matter of law, the motion for summary judgment to preclude evidence of these damages is denied.

**b.**     **Emotional Distress Damages under the FDCPA and RFDCPA**

Defendant next contends that, since Plaintiff did not see a doctor and was not prescribed any medication for her alleged emotional distress, she fails to demonstrate emotional distress based upon any violation of the statute.  (ECF No. 43 at 8-9.)  At the hearing, Defendants argued that absent expert opinion or objective evidence of emotional distress, Plaintiff cannot prevail on her emotional distress claim.[9]

---

[8]   The outcome may be different in a scenario where an innocent creditor retains the service of a third-party agent who violates the FDCPA and remits the improperly obtained payments to the innocent creditor, who had no involvement in the FDCPA violations.  Since such facts are not presented in this case, the issue of whether payments in that situation could be regarded as "actual damages" is left unresolved..

[9]   Defendants do not contend that emotional distress damages cannot be compensated as a matter of law under the definition of "actual damages" in the FDCPA, just that the facts here to not rise to the level of emotional distress.  Numerous cases hold that emotional distress is included in actual damages. see <u>McCoullough v. Johnson, Rodenburg & Lauinger, LLC</u>, 637 F.3d 939, 957 (9th Cir. 2011); <u>Guthrie v. JD Enterprise &Financial Servs.</u>, No. 11-cv-911-

Plaintiff responds that at the time of the communication she had been diagnosed with lupus and severe stress causes her to have "flare-ups" which result in severe body and joint pain, nausea, fatigue, headaches and insomnia.  (Decl. of Rosario Alonso ¶ 12, ECF No 51-3.)  Plaintiff did not see her doctor because she already had the medication she needed and was aware of how to treat the flare-ups that were caused by stress from the incident.  (Id. at ¶ 13.)  Plaintiff contends that after the phone calls with Defendant's representative she suffered extreme anxiety and stress and was in constant fear of being arrested, escorted out of work, and losing her job.  As a result, she suffered a painful lupus flare-up.  (Id. at ¶ 11.)

i.     State law elements of intentional infliction of emotional distress are not required for Plaintiff to recover emotional distress damages

There is a split among district courts on whether a plaintiff's claim for emotional distress damages under the FDCPA should be evaluated using the state law governing the tort of intentional infliction of emotional distress or whether a different standard should be used.  Branco v. Credit Collection Serv. Inc., No. 2:10-cv-01242-FCD-EFB, 2011 WL 3684503, at *10 (E.D. Cal. Aug. 23, 2011).  The Ninth Circuit has yet to address this issue.

Some courts have held that a plaintiff must prove a claim for intentional infliction of emotional distress ("IIED") under state law to collect damages for emotional distress under a suit brought pursuant to FDCPA.  Costa v. National Action Financial Serv., 634 F.Supp.2d 1069, 1078 (E.D. Cal. 2007); Valero v Bryant, LaFayette and Assoc., LLC, No. 1:10-cv-01174-OWW-GSA, 2011 WL 1438436, *3 (E.D. Cal. April 14, 2011); Bolton v. Pentagroup Financial Serv., LLC, No. 1:08-cv-00218-AWI-GAS, 2009 WL 734038, *9 (E.D. Cal. Mar. 17, 2009).  This line of analysis stems from the district court case in Costa.  The Costa court, in reviewing the statute itself, found that there was no intent by Congress to create a more lenient standard when it comes to emotional distress damages.  634 F.Supp.2d at 1078.  Additionally, the Costa court noted that the statute expressly requires definable actual damages to recover above and beyond statutory

L(DHB), 2013 WL 2244337, at *3 (S.D. Cal. May 21, 2013); Torres v. Bernstein, Shapiro, & Assoc., LLC, No. 2:10-cv-02507 KJM DAD, 2012 WL 2376401, at *4-5 (E.D. Cal. June 22, 2012).  Accordingly, the issue being addressed here is what does one need to prove in order to be compensated for emotional distress damages under the FDCPA.

1   damages, and that IIED is a definable standard to ensure that the damages are real and

2   quantifiable.  Id.

3        Other courts have compared the language of the FDCPA to the Fair Credit Reporting Act

4   ("FCRA") to find that emotional distress damages under the FDCPA can be proven without first

5   having to prove a cause of action under state law.  See Ramsour v. JP Morgan Chase Bank, No.

6   3:11-cv-00116-WQH-BLM, 2012 WL 6004230, at *6 (S.D. Cal. Nov. 30, 2012); Torres v.

7   Bernstein, Shapiro & Assoc. LLC, No. 2:10-cv-02507-KJM-DAD, 2012 WL 2376401, at *4

8   (E.D. Cal. June 22, 2012); Panahiasl v. Gurney, No. 5:04-cv-04479-JF, 2007 WL 738642, at *2

9   (N.D. Cal. Mar. 8, 2007).  An out of circuit court considered that "[g]iven Congress' intent to

10  establish uniform guidelines for enforcing permissible debt collection practices, it would be

11  counter intuitive to read the FDCPA so that plaintiffs have different rights of recovery in each

12  state." Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182, 189 (D. Del. 1991).

13       In Riley v. Giguiere, 631 F.Supp.2d 1295 (E.D. Cal. 2009), the court addressed the

14  standard that should apply to emotional distress claims in FDCPA actions.  The court found "no

15  reason why the [FCRA] standard would not apply to the damages provision of the FDCPA."

16  Riley, 631 F.Supp.2d at 1315.  The court reasoned that:

17
18       Both statutes have similar purposes and both include identical provisions
         regarding a plaintiff's recovery for actual damages. In holding that the plaintiff
         must prove the elements of an intentional infliction of emotional distress claim
19       under California law in order to recover for emotional distress damages, the Costa
         court reasoned that "the FDCPA expressly requires to recover above and beyond
20       statutory damages, definable actual damages." Costa, 2007 WL 4526510 at *8;
         see also Bolton, 2009 WL 734038 at *9–10 (citing same). However, the FCRA
21       has the same requirement and the Ninth Circuit held that this standard is met
         simply by plaintiff tendering evidence of his actual emotional distress, without
22       incorporating the state law's tort elements. See [Guimond v. Trans Union Credit
         Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995)].

23       Moreover, under the FDCPA, the defendant's subjective intent is not a necessary
24       element for the plaintiff's recovery. [Clark, 460 F.3d at 1174–77.] It appears
         illogical . . . for the court to presume that Congress intended for the plaintiff to be
25       required to prove that defendant intentionally caused him emotional distress in
         order to recover for such damages, when defendant's subjective intent is in no
         other way relevant to plaintiff's recovery. Such a construction of the statute
26       appears particularly insupportable in light of the fact that Congress did permit a
         court to reduce the damage award if there was evidence that defendant did not
27       intend to violate the FDCPA but that its conduct was the result of a bona fide
         error. 15 U.S.C. § 1692k(c); see also Clark, 460 F.3d at 1174–77. Put plainly, it is
28       not proper for the court to insert an intent requirement into plaintiff's recovery for

14

emotional distress damages where Congress has not done so and where Congress expressly provided for the role defendant's intent should have in a FDCPA claim.

Riley, 631 F.Supp.2d at 1315-16.

The Court finds the reasoning of Riley persuasive.  Furthermore, one of the purposes of the FDCPA is "to promote consistent state action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  This is clearly a national law intended to have nationwide application which requires uniformity in application.  In following this premise, absent Congressional intent to the contrary, applying the law of the forum state in which the federal court sits would be counter-intuitive to the intent and goals behind the enactment and enforcement of the FDCPA.  Many debt collection practices cross state lines and involve debtors in multiple states.

States have different elements and requirements when it comes to the application of the law of emotional distress and themselves lack a uniform application.  43 Am Jur Proof of Facts 2d § 2 (2013).  As a result, federal courts sitting in a particular forum could arrive at different decisions in defining actual damages when applying the forum state's law.  This problem could be further exacerbated when dealing with a class action application as to the choice of law applicable in a given class action case.  The Court sees no reason for Congress to enact a statute of this nature which looks to the state forum where the federal court sits for the answer, especially absent clear Congressional intent or guidance.  A stronger rationale exists for having a uniform interpretation when it comes to defining "actual damages" under the FDCPA.  See Smith, 124 B.R. at 189.

Further, application of state law could simply trump the intent of Congress when a state does not recognize or chooses a more stringent requirement when it comes to assessment of damages under a federal statute.  Accordingly, this Court adopts the rationale found in Riley and other similar articulated cases that hold that a plaintiff need not look to a definable state law cause of action when it comes to proving emotional distress damages.  However, the court must address what standard is to be applied when it comes to  proving emotional distress damages.

ii.     In the Ninth Circuit, proof of emotional distress can be based on a plaintiff's testimony

At the July 24, 2013 hearing, Defendants argued that Plaintiff cannot prove her emotional distress claims based upon her own testimony and where no expert evidence is offered.  While the Court agrees that emotional distress damages cannot survive merely because a plaintiff says so without any objective evidence, the Court also finds that such evidence need not be proven through the use of expert testimony.  The answer for the Court lies in between.

Again, courts have split on the degree of specificity that is needed to sustain emotional distress damages.  Nelson v. Equifax Informational Systems, 522 F.Supp.2d 1222, 1235 (C.D. Cal. 2007).  While other circuits may require objective evidence requirements to prove emotional distress damages, that is not the law in this circuit.  Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 513 (9th Cir. 2000).

Defendants ask the Court to adopt the same standard as the Fifth and Seventh Circuits which requires that a plaintiff must present medical or psychological evidence to support her emotional distress claim.  See Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001); Wantz v. Experian Information Solutions, 386 F.3d 829, 834 (7th Cir. 2004).  However, the Ninth Circuit has stated that "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in ... the Ninth Circuit, or the Supreme Court."  Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003).  Based on Circuit precedent, the Court finds that a plaintiff's testimony alone can be enough to support emotional distress damages.  See Zhang, 339 F.3d 1020, 1040 (9th Cir. 2003); Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional distress damages based upon plaintiff's testimony); Johnson v. Hale, 13 F.3d 1351, 1352 (9th Cir. 1994) (emotional distress damages can be awarded based upon testimony or appropriate inference from the circumstances); Nelson, 522 F.Supp.2d at 1235 (finding a plaintiff's testimony can sufficiently establish emotional distress damages in an FDCPA action); Acton v. Bank One Corp., 293 F.Supp.2d 1092, 1101 (D. Ariz. 2003) (finding same in FCRA action).

Defendants contend that Plaintiff must show more than mere transitory symptoms of

1    emotional distress, which she has not done in this instance.  (ECF No. 65 at 3.)  However, in the

2    Ninth Circuit a plaintiff may recover for actual damages resulting from emotional distress as long

3    as she has tendered evidence substantiating that she suffered emotional distress as a result of the

4    defendant's FDCPA violations.  Riley, 631 F.Supp.2d at 1315.  Plaintiff has testified that she had

5    symptoms of severe body and joint pain, nausea, fatigue, headaches and insomnia which lasted

6    for several months after the incident alleged.  A material facts exists as to the level of  Plaintiff's

7    stress and fear based upon the information given to her former spouse by the individual

8    identifying himself as Officer Carmichael and relayed to Mr. Alonso.  Further, whether Plaintiff's

9    emotional stress was caused by Mr. Darwin informing her that if she did not make a payment that

10   day, he would have a law enforcement officer escort her from work the following day is a

11   material fact which the trier of fact must determine; as is the matter of whether Plaintiff's alleged

12   symptoms rise to the level of severe emotional distress.

13          iii.    Plaintiff's response to the threats was not irrational

14          Finally, in their reply to Plaintiff's opposition, Defendant Blackstone contends that

15   Plaintiff's fear of having an officer come to her work and escort her jail was irrational.  (ECF No.

16   54 at 4-5.)  Defendant Blackstone, citing White v. Goodman, 200 F.3d 1016 (6th Cir. 2000),

17   argues that the FDCPA does not protect the irrational fears of the debtor.

18          In White the court was addressing language that was included in a collection letter sent to

19   Plaintiff.  On the back of the letter a paragraph appeared that listed the rights that were required to

20   be given to Colorado residents.  White, 200 F.3d at 1020.  Plaintiff was arguing that the letter

21   implied that residents of other states did not have similar rights while the FDCPA conferred the

22   same rights on all debtors.  Id.  It was in this context that the court stated that any document could

23   be misread and the FDCPA does not protect the irrational debtor.  Id.

24          This action is distinguishable in that Plaintiff is alleging that agents of Defendant

25   Blackstone made specific threats to both her and her ex-husband that an officer would come to

26   her work and escort her away if she did not pay her debt.  While debtor's prisons no longer exist

27   in the United States, the Court finds that the fear that the threats would be carried out was not

28   irrational given the circumstances presented here.

1    Accordingly, Plaintiff has submitted evidence to show that disputed issues of material fact

2    exist and Defendant Blackstone's motion for summary judgment is denied.

3        **C.    Defendant Elsen's Motion for Summary Judgment**

4    Defendant Elsen moves for summary judgment on the ground that Plaintiff has presented

5    no evidence that he is liable under either the FDCPA or RFDCPA, and neither Defendant nor

6    Plaintiff can provide evidence that he is liable under the Acts.[10]   Plaintiff replies that Defendant

7    Elsen did not have to directly participate in the collection of Plaintiff's debt, but that it is

8    sufficient that he was involved in the day to day collection activities, supervised the debt

9    collectors and indirectly exercised control over the debt collection business.

10       1.    Undisputed Facts

11   Defendant Elsen is a resident of the City of Irvine, County of Orange, State of California.

12   (UF 1.)  At all relevant times, Defendant Elsen was the manager and was the person in control of

13   Defendant Blackstone.  (UF 2.)  Defendant Elsen is the founder, sole owner, and sole managing

14   member of Defendant Blackstone.  (UF 3.)  Defendant Elsen was present at and managed the

15   office every day.  (UF 4.)  Defendant Elsen was the person monitoring and supervising Defendant

16   Blackstone's collectors' conduct.  (UF 5.)  Defendant Elsen solely provided training to his debt

17   collection employees.  (UF 6.)

18   Defendant Elsen monitored collection phone calls.  (UF 7.)  Defendant Elsen addressed

19   complaints received by debtors.  (UF 8.)  Defendant Elsen created documents for the purposes of

20   training his employees on debt collection.  (UF 9.)  Defendant Elsen created letters sent to debtors

21

22   [10]In support of his motion, Defendant Elsen submits an unsigned declaration.  Since Defendant's declaration is
     unsigned it does not comply with the Federal Rules of Civil Procedure and cannot be considered in support of the
23   motion for summary judgment.  See Fed. R. Civ. P. § 1746.  Defendant's declaration was reviewed to determine
     whether the Court should require him to submit a signed declaration.  Upon review of the declaration, the Court finds
24   that it directly contradicts Defendant's deposition testimony.  For example, Defendant Elsen states in his deposition
     that he was not regularly engaged in the collection of debts in October 2010, however in his deposition testimony he
25   stated that he was at work every day during 2010, except one, that he handled all consumer complaints, answered the
     phone and transferred calls to the collection agents.  Further, Defendant's declaration is for the most part comprised
26   of statements that are legal conclusions and do not affect the decision on the motion for summary judgment.
     Therefore, the Court will disregard the declaration and will not address Plaintiff's objections.
27
     Defendant also argues that he is entitled to summary judgment on Plaintiff's alter ego claim.  However, since this
28   claim is being dismissed without leave to amend, it not be addressed in the motion for summary judgment.

and instructed his collection employees on how to use them.  (UF 10.)  Defendant Elsen was the only person that Defendant Blackstone employees would go to when they had questions, problems, or issues regarding their debt collection efforts.  (UF 11.)

Defendant Elsen regularly answered incoming telephone calls from debtors.  (UF 12.)  Defendant Elsen exclusively directed how debt portfolios would be collected.   (UF 13.)  Defendant Elsen personally decided whether to take legal action on a debtor's account.  (UF 14.)  Defendant Elsen was solely responsible for firing and hiring employees.  (UF 15.)

Defendant Elsen purposefully structured his companies with fewer employees (up to 17 telephone collectors), which allowed him to "have more control, more hands-on to know exactly what they're doing, to what exactly they're saying."  (UF 16.)[11]

2.    Discussion

The parties agree that the requirements under California Civil Code section 1788.17 are virtually identical to those of the FDCPA.  Section 1788.17 provides that, in collecting or attempting to collect a consumer debt, debt collectors shall comply with the provisions of the FDCPA.  The Court's discussion on the motion for summary adjudication of Plaintiff's FDCPA claims applies equally to Plaintiff's RFDCPA claims.

"The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices."  Guerrero v. RJM Acquisitions LLC, 449 F.3d 926, 938 (9th Cir. 2007).  The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The FDCPA does not require a mental state to violate it, as it is a strict liability statue.  Cruz v. International Collection Corp., 673 F.3d 991, 997 (9th Cir. 2012).  Under the statute, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . to another."  15 U.S.C. § 1692a(6).

---

[11] The remainder of the undisputed facts relate to the alter ego claim, which has been dismissed from this action, and therefore will not be set forth in this order.

1          **a.      Defendant Elsen is a Debt Collector Under the Statute**

2          This circuit recently addressed whether the sole owner, officer, and director of a

3     corporation could be liable under the FDCPA where he directly participated in collecting debts.

4     In <u>Cruz</u>, the Ninth Circuit considered whether the sole owner, officer, and director of the

5     corporation was a "debt collector" under the statute.  The court found that the owner of the debt

6     collection agency was a debt collector when he did everything for the collection agency,

7     including debt collection activities.  <u>Cruz</u>, 673 F.3d at 999.

8          Similarly here, although Defendant Elsen claims that he is not a debt collector, he was at

9     the business every day managing the office, and monitoring and supervising the debt collectors.

10    (UF 4, 5.)  Defendant Elsen handled any complaints regarding the collection activity of the debt

11    collectors.  (UF 8.)  Defendant Elsen regularly answered incoming calls from debtors.  (UF 12.)

12    Defendant Elsen created the letters to confirm the payment arrangements made by the debt

13    collectors and trained the debt collectors on how to use them.  (UF10.)  Employees of Defendant

14    Blackstone would go to Defendant Elsen when they had questions, problems, or issues regarding

15    their debt collection efforts.  (UF 11.)

16         Defendant Elsen exclusively directed how the debt portfolios would be collected.  (UF

17    13.)  Defendant Elsen created the letters to confirm the payment arrangements made by the debt

18    collectors and trained the debt collectors on how to use them.  (UF10.)  Defendant Elsen created

19    training documents and provided the training for the debt collection employees.  (UF 6, 9.)

20    Decisions on whether to send an account to the attorney for legal collection were made by

21    Defendant Elsen.  (UF 14)  Defendant Elsen was responsible for hiring and firing of all

22    employees. (UF 15.)

23         Plaintiff has submitted sufficient evidence to show that Defendant Elsen qualifies as a

24    debt collector under the statute.  However, the fact that Defendant Elsen qualifies as a debt

25    collector does not mean that he has violated the statute.  The FDCPA prohibits debt collectors

26    from taking certain action and the question here is whether Defendant Elsen is a debt collector

27    who violated a provision of the FDCPA.  The Court must determine if Plaintiff has submitted

28    evidence that Defendant Elsen took action that would be sufficient to hold him personally liable

for the alleged violations.  The Ninth Circuit has not yet addressed whether an officer who qualifies as a debt collector can be liable solely based upon his indirect participation in the debt collection process.  Cruz, 673 F.3d at 1000.

### b. Defendant Elsen's Participation in the Business is Sufficient to Hold Him Liable

"Well-established canons of statutory construction provide that any inquiry into the scope and meaning of a statute must begin with the text of the statute itself."  Clark, 460 F.3d at 1168. "Where the statute's language is plain, the sole function of the courts is to enforce its terms, for courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructure Group, 387 F.3d 1046, 1051 (9th Cir. 2004) (internal punctuation and citations omitted).  In determining the meaning of the statute, the court is not to look at the words of the statute in isolation, but should look to "the specific context in which that language is used, and the broader context of the statue as a whole."  Int'l Ass'n of Machinists & Aerospace Workers, 387 F.3d at 1051 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1994).

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  To be liable under the FDCPA a defendant must be a debt collector, which is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Courts have found an owner or partner individually liable under the FDCPA based upon their supervisory control of debt collection employees.  See Albanese v. Portnoff Law Assoc., Ltd., 301 F.Supp.2d 389, 400 (E.D. Pa. 2004).  In Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433 (6th Cir. 2008) the defendant, an attorney owner of the LLC, argued that he could not be held liable for violations of the FDCPA because he did not personally

1    participate in attempting to collect the debt at issue in the case. The Sixth Circuit found that the

2    attorney could be personally liable on the basis of his general participation in the debt collection

3    activities of the LLC. Kistner, 518 F.3d at 437.

4           Similarly, courts in this circuit have found that an individual can be personally liable as a

5    debt collector under the FDCPA when he exercises control over the affairs of the debt collection

6    business or was regularly engaged, directly and indirectly, in the collections of debts. See Smyth

7    v. Merchants Credit Corp., No. 2:11-cv-01879 RSL, 2012 WL 588744, at *3 (W.D. Wash. Feb.

8    22, 2012); Del Campo, 718 F.Supp.2d at 1129; Smith v. Levine Leichtman Capital Partners, Inc.,

9    723 F.Supp.2d 1205, 1214 (N.D. Cal. 2010); Brink v. First Credit Resources, 57 F.Supp.2d 848,

10   862 (D. Ariz. 1999).

11          Defendant Elsen requests that the Court follow the rulings of Schwarm v. Craighead, 552

12   F.Supp.2d 1056 (E.D. Cal. 2008), and Del Campo, 718 F.Supp.2d 1116. The Schwarm court held

13   that serving as a director, officer or shareholder of a debt collection business in not sufficient by

14   itself to hold an individual liable as a debt collector, because section 1692(a)(6) requires that the

15   individual "regularly collects or attempts to collect, directly or indirectly, debts owed or due . . .

16   to another." Schwarm, 552 F.Supp.2d at 1073 (citing 15 U.S.C. § 1692a(6)). However, in

17   deciding that the chief executive officer could be personally liable under the FDCPA, the court

18   held that the officer was liable because he oversaw the collecting of debts, had final authority

19   over the collection procedures used by the debt collectors, developed the software used by the

20   debt collectors, and was solely responsible for managing and maintaining the computer system

21   that implemented the collection program. Id. at 1073. Additionally, the chief executive officer

22   was the individual who formed relationships with merchants and negotiated contracts; interacted

23   with debtors and clients in administering the collection efforts; and trained, managed and

24   supervised the collection employees. Id.

25          Defendant Elsen's responsibilities at the collection agency were substantially similar to

26   those of the chief executive officer in Schwarm. Defendant Elsen was the person responsible for

27   purchasing all the portfolio accounts that were worked by the debt collectors and made all

28   decisions on whether the accounts were worked or sold off (Depo. of Jason Elsen at 328:15-

329:1); provided all training and instruction on how the debt collectors were to work these accounts (UF 6, 13); supervised the collection employees on a daily basis (UF 4, 5, 7); handled complaints from consumers (UF 8); and regularly answered incoming phone calls (UF12).

Next, in Del Campo, the highest ranking officer had minimal involvement in the day to day activities of the debt collection process but played a critical role in the company's operations. The court there found that he too could be held personally liable because "he continued to sign all sales contracts, indicating that he never relinquished ultimate control over the Company's operations." Del Campo, 718 F.Supp.2d at 1129.

Similarly, here Defendant Elsen's role in Defendant Blackstone was critical as he obtained all the accounts and determined which would be worked.  (Depo. of Jason Elsen at 328:15-329:1.) Defendant Elsen provided all training and instruction on how the debt collectors were to work these accounts.  (UF 6, 9, 13.)  He created the letters to confirm the payment arrangements made by the debt collectors and trained the debt collectors on how to use them.  (UF 10.)

However, Defendant Elsen's activities as managing director are much more closely related to the debt collecting process than those found to hold the defendant personally liable in Del Campo.  Defendant Elsen was also intimately involved in the day to day activities of the debt collection business by supervising the employees on a daily basis and answering the telephone. (UF 4, 5, 7, 12.)  In this instance, Plaintiff has presented evidence to show that Defendant Elsen was directly and indirectly involved in debt collection.  There are clearly issues of material fact which the trier of fact will determine.

The Court finds that, regardless of which legal standard is adopted from the cases discussed above, Plaintiff presented sufficient evidence to establish a genuine issue of material fact with respect to Elsen's liability.  Notably, the FDCPA explicitly includes in the definition of debt collector those individuals who indirectly participate in debt collection activities.  15 U.S.C. § 1692a(6).  The FDCPA's broad definition of debt collector evinces an intent to broadly impose liability on persons who are directly or indirectly involved in debt collection activities.  Id.  The action here alleges the type of abusive debt collection practices that the Act was specifically enacted to prohibit.  Accordingly, shielding Defendant Elsen from liability in this instance, based

1   upon the facts alleged  here, would be contrary to the express goal of the FDCPA.  The proffered

2   evidence demonstrates sufficient material facts that Defendant Elsen trained his subordinates and

3   established the policies followed by his subordinates, creating an inference that his supervisory

4   role had a direct or indirect causal role in the unlawful activities alleged by Plaintiff.  However,

5   these are issues for the trier of fact.  Plaintiff has submitted sufficient evidence to demonstrate

6   that a triable issue of material fact exists; and Defendant Elsen's motion for summary judgment

7   on this ground is denied.

8                                                    **V.**

9                                    **CONCLUSION AND ORDER**

10          Based on the foregoing, IT IS HEREBY ORDERED that:

11          1.      Defendant Elsen's motion to dismiss, filed May 13, 2013, is GRANTED IN PART

12                  AND DENIED IN PART AS FOLLOWS:

13          a.      Defendant Elsen's motion to dismiss for failure to state a claim under 15 U.S.C. §

14                  1692 et. seq. is DENIED;

15          b.      Defendant Elsen's motion to dismiss for failure to state a claim based upon alter

16                  ego liability is GRANTED; and

17          c.      Plaintiff's claim for alter ego liability is DISMISS WITHOUT LEAVE TO

18                  AMEND;

19          2.      Defendant Blackstone's motion for summary judgment, filed May 20, 2013, is

20                  DENIED; and

21          3.      Defendant Elsen's motion for summary judgment, filed May 20, 2013, is

22                  DENIED.

23

    IT IS SO ORDERED.

24

25   Dated:   **August 2, 2013**

26                                                  UNITED STATES MAGISTRATE JUDGE

27

28